UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02557-SSS-DTB | Date | October 10, 2025 |
| Title | *Lamar Central Outdoor, LLC v. City of Perris et al.* | | |

Present: The Honorable      SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 10]**

On October 10, 2025, Plaintiff Lamar Central Outdoor, LLC filed an Ex Parte Application for a Temporary Restraining Order against Defendant City of Perris. [Dkt. No. 10, "App."]. Plaintiff seeks to enjoin the City from enforcing the Ordinances restricting cannabis advertisements on billboards against Plaintiff and any other person or entity engaged in cannabis advertising within the applicable area. [*Id.* at 16]. Defendant filed its opposition on October 6, 2025. [Dkt. No. 15, "App. Opp."].

For the reasons stated below, Plaintiff's Ex Parte Application for a Temporary Restraining Order is **GRANTED**.

## I.   BACKGROUND

Plaintiff is an outdoor billboard advertising company that owns and operates 14 outdoor billboard advertising structures (28 faces) in the City. [App. at 15]. Its billboards in the City are located along the I-215 highway. [*Id.*]. Plaintiff also owns and operates 9 outdoor billboard structures (18 faces) within a one-mile

radius of the City and within 660 feet of a freeway. [*Id.*]. Of these billboards, Plaintiff had cannabis advertisements on 12 billboard faces. [*Id.* at 16].

On August 26, 2025, the City Council of the City of Perris passed Ordinances 1460 and 1461 ("Ordinances"), amending the City of Perris's Municipal Code to ban cannabis advertising on off-site freeway signs. [*Id.* at 11]. Specifically, they prohibit cannabis dispensaries and commercial marijuana operation permittees from advertising its business or operation on any off-premises advertising display on a sign or other structure, including billboards that are located both within the City, within a one-mile radius of the City boundaries, and within 660 feet of the nearest edge of a freeway right-of-way line. [*Id.* at 12].

The following are the City's justifications for the Ordinances: (1) the restriction is "in response to concerns with cannabis advertisement along the I-215 Freeway, which creates a negative perception of the City as a desirable place to live, visit, or invest, especially given ongoing concerns about health and safety associated with cannabis use;" (2) "the proliferation of cannabis advertisements along I-215 can reasonably create or add to a false public perception, particularly for people driving to, though, or from the City on I-215, that the City has little to offer other than cannabis businesses, or that the City has an undue proliferation of cannabis businesses;" (3) "studies have shown that cannabis businesses still carry a negative connotation associated with drug use, nuisances, criminal activity, smoking and/or other health and safety concerns in the minds of many people, and in some cases can have a negative effect on property values;" and (4) "the presence of cannabis advertisements along 1-215 in or within close proximity to the City's boundaries has a negative effect on the public perception of the desirability of the City as a place to visit, do business, or live, resulting in adverse impacts to economic development and public welfare in the City." [*Id.* at 13–14].

However, the City does allow cannabis businesses to lawfully operate in the City and has stated that it is "not averse to commercial cannabis activity that is compliant with State and local law." [*Id.* at 14]. The City also allows cannabis cultivation, distribution, manufacturing, testing, and retail. [*Id.*]. It approved a comprehensive regulatory program for cannabis related operations in 2016 to "ensure the health, welfare, and safety of the City's residents, while complying with State law." [*Id.* at 10]. In 2021, the City passed an ordinance to expand the zones in the City where cannabis cultivation and distribution are allowed, citing the reason as "the lack of available property zoned for cannabis use." [*Id.*]. The City currently has at least 8 cannabis dispensaries operating within the City. [*Id.*].

However, it is no longer accepting new cannabis retail use permit applications. [*Id.*].

As result of the Ordinances, Plaintiff has been forced to remove its cannabis advertisements from 12 faces of its billboard structures located within the City and within a one-mile radius of the City and 660 feet of a freeway. [*Id.* at 16]. Plaintiff filed a Complaint on September 26, 2025, for Declaratory and Injunctive Relief against the City, seeking to permanently enjoin the City from enforcing the Ordinances against Lamar or any other person or entity engaged in lawful, truthful, and non-misleading cannabis advertising, on the grounds that such enforcement violates Lamar's commercial speech rights under the First Amendment to the United States Constitution and Article I, Section 2 of the California Constitution. [*Id.*]. On October 10, 2025, Plaintiff Lamar Central Outdoor, LLC filed an Ex Parte Application for a Temporary Restraining Order against Defendant City of Perris. [Dkt. No. 10]. Defendant filed its opposition on October 6, 2025. [Dkt. No. 15].

## II.   LEGAL STANDARD

To justify ex parte relief, the moving party must demonstrate that it would be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that the party is "without fault in creating the crisis that requires ex parte relief, or that crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Con'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a temporary restraining order, Plaintiff must show: (1) it is "likely to succeed on the merits" of its underlying claims, (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Additionally, the purpose of a temporary restraining order "is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

Courts in the Ninth Circuit may consider the *Winter* factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the

plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the *Winter* test").

## III. DISCUSSION

### A. Justification for Ex Parte Relief

The Court begins by assessing whether Plaintiff's request for an injunction through an ex parte application was appropriate. The Court finds that it was.

As discussed further in the merits analysis below, Plaintiff has met its burden that it would be irreparably prejudiced if this request for relief was heard according to regular noticed motion procedures. The Ordinances have already gone into effect as of September 26, 2025, and Plaintiff has been forced to remove all of its cannabis advertisements from 12 outdoor billboard advertising structures within the City and within a one-mile radius of the City and 660 feet of a freeway. [App. at 16]. If the Court does not enjoin the City from enforcing the Ordinances against Plaintiff, Plaintiff's First Amendment commercial speech rights will continue to be infringed, and Plaintiff would thus be irreparably prejudiced. *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 829 (9th Cir. 2013) (affirming the district court's preliminary injunction of an Arizona law that limited commercial speech because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

The Court also finds that Plaintiff was without fault in creating the crisis that requires ex parte relief, and if it was at fault, that the crisis occurred as a result of excusable neglect. Defendant argues that no true emergency exists here to justify ex parte relief because Plaintiff was at fault for creating a false crisis by delaying this application until the "eleventh hour." [App. Opp. at 7–8, 15]. Defendant points out that Plaintiff could have filed a regularly noticed motion for preliminary injunction immediately after the Ordinances were adopted on August 26, 2025, instead of waiting more than a month. [*Id.*].

However, the Court finds this delay reasonable and Plaintiff's neglect excusable at worst. The Ordinances did not take effect until September 26, 2025, [*Id.* at 8], and Plaintiff filed its Complaint on that same day. [Dkt. No. 1]. From there, Plaintiff filed its ex parte application less than a week after the Complaint

was filed. [Dkt. No. 10]. The pace at which the Complaint and the ex parte application was filed is not so unreasonably delayed as to make it inexcusable. Additionally, during the period between when the Ordinances were adopted (August 26) and when they were put into effect (September 25), Plaintiff's counsel had sent a letter to Defendant regarding Plaintiff's intent to seek to enjoin the Ordinances in federal court. [Dkt. No. 10-1, Decl. of Theodore Stream at 2]. Defendant did not respond. [*Id.*]. It can be reasonably inferred that Plaintiff was awaiting Defendant's response before finalizing steps to file the Complaint and eventually the ex parte application. It is also reasonable that Plaintiff had waited until the Ordinances took effect on September 26 before filling its Complaint and ex parte application.

As such, the Court finds that Plaintiff's request to enjoin the Ordinances was appropriately filed as an ex parte application.

**B.      Likelihood of Success on the Merits**

The Court next considers Plaintiff's showing on the first *Winter* factor, likelihood of success on the merits. Plaintiff's Application is premised on its First Amendment cause of action for infringement on its commercial speech rights and on its state law cause of action under Article I, Section 2 of the California Constitution.

The United States Supreme Court has established a four-part test for assessing the constitutionality of a restriction on commercial speech: (1) if "the communication is neither misleading nor related to unlawful activity," it merits First Amendment scrutiny as a threshold matter; for the restriction to withstand such scrutiny, (2) "the State must assert a substantial interest to be achieved by restrictions on commercial speech;" (3) "the restriction must directly advance the state interest involved;" and (4) it must not be "more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 562–63 (1980) (citation modified).

Commercial illustrations and advertisements on billboards are entitled to the same First Amendment protections afforded verbal commercial speech, and restrictions on the use of visual media of expression in advertising must survive intermediate scrutiny under the test of *Central Hudson*. *Zauderer v. Off. of Disciplinary Couns. of the Sup. Ct. of Ohio*, 471 U.S. 626, 647 (1985); *see also Citizens of Free Speech, LLC v. Cnty. of Alameda*, 114 F. Supp. 3d 952, 969 (N.D.

Cal. 2015) (applying the *Central Hudson* test when determining whether a county zoning ordinance that regulated billboards and advertising signs violated the First Amendment).

### 1. Whether the Communication Is Misleading or Related to Unlawful Activity

First, to receive First Amendment protections, the commercial speech "must concern lawful activity and not be misleading." *Cent. Hudson*, 447 U.S. at 566. Plaintiff argues that the billboard advertisements at issue concern lawful activity because cannabis is legal in California and the advertisements are for permitted cannabis businesses operating in a city in California. [App. at 19]. Defendant argues that the advertisements are not afforded First Amendment protections because federal law is supreme under the Supremacy Clause of the U.S. Constitution, rendering advertisements of cannabis distribution as concerning unlawful activity for the purposes of the *Central Hudson* test. [App. Opp. at 8–12].

There does not appear to be binding case law explicitly holding that advertising for activity that is legal under state law and illegal under federal law is "lawful" for the purposes of the *Central Hudson* test. This Court thus considers other courts' decisions from other districts and circuits.

The First Circuit considered a similar question in dicta. *See New England Accessories Trade Ass'n, v. City of Nashua*, 679 F.2d 1, 3 (1st Cir. 1982). In *New England Accessories*, the First Circuit heard a First Amendment challenge to a New Hampshire statute making it illegal to place drug paraphernalia advertisements outside of the state, even if the sale of drug paraphernalia was legal in other states. *Id.* at 3. The court held that drug paraphernalia advertising did not receive First Amendment protections because it promoted illegal ingestion of drugs, which was "criminal in all jurisdictions." *Id.* But the First Circuit noted in a footnote that "[i]f New York, or some other state, decided to legalize the sale and use of marijuana, New Hampshire would have greater difficulty . . . prohibiting an advertisement" pertaining to marijuana. *Id.* at 4. This statement implies that courts would extend constitutional protection to advertising for activities that are legal in the state where the transaction would occur.

The Ninth Circuit reinforced this implication in *Washington Mercantile Association v. Williams*, holding that the

> [s]ale or delivery of drug paraphernalia is illegal in Washington, so advertisements for sales in or mail orders from Washington are unprotected speech. In contrast, the advertiser who proposes a transaction *in a state where the transaction is legal is promoting a legal activity. Its speech deserves First Amendment protection*.

733 F.2d 687, 691 (9th Cir. 1984) (emphasis added).

However, the Montana Supreme Court held that medical marijuana advertising does not concern lawful activity and, therefore, is not afforded constitutional protection. *Mont. Cannabis Indus. Ass'n v. State*, 368 P.3d 1131, 1150, *cert. denied*, 579 U.S. 930 (2016). The Montana Supreme Court reasoned that

> [b]ecause federal law governs the analysis of this issue, we conclude that an activity that is not permitted by federal law—even if permitted by state law—is not a "lawful activity" within the meaning of *Central Hudson*'s first factor. As such, the advertisement of marijuana is not speech that concerns lawful activity. There is no First Amendment violation and our analysis under *Central Hudson* therefore ends here.

*Id.*

In *Cocroft v. Graham*, the Northern District of Mississippi adopted the reasoning in *Montana Cannabis*, finding that advertisements of medical cannabis were commercial speech that concerned unlawful activity and thus were not afforded First Amendment protections under *Central Hudson*. 712 F. Supp. 3d 866, 870–76 (N.D. Miss. 2024). The court there reasoned that the "basic language of the Supremacy Clause . . . makes it clear that . . . whatever is unlawful under federal law is necessarily unlawful in every state." *Id.* The court distinguished the Ninth Circuit's holding in *Washington Mercantile*, stating that it only involved conflicting laws of two different *states* and said nothing about when state law conflicts with federal law. *Id.* at 876. The court discarded the *Washington Mercantile* court's dependence on *Bigelow v. Virginia*, 421 U.S. 809 (1975), which held that "the First Amendment analysis focuses on whether a transaction is legal under the laws of the state where it is proposed, not whether it is illegal under the laws of another jurisdiction." *Bigelow*, 421 U.S. at 824–25; *Cocroft*, 712 F. Supp. 3d at 874. To the *Cocroft* court, the U.S. Supreme Court was merely considering the rights of "two constitutional equals, namely the states of New York and

Virginia" and that federal law is not the "law of another jurisdiction" but rather the supreme law in all states. 712 F. Supp. 3d at 874.

However, this Court finds that the claim here most resembles that of *Seattle Events v. State*, in which the Court of Appeals of Washington distinguished *Montana Cannabis*'s holding on the basis that the *Montana Cannabis* plaintiffs "rel[ied] exclusively on federal law in their argument on this issue" and did not bring a claim under the free speech provision of the Montana Constitution. 512 P.3d 926, 934–35 (Wash. Ct. App. 2022). The *Seattle Events* plaintiff instead brought a complaint seeking injunctive relief under the Washington state constitution in addition to the First Amendment to the U.S. Constitution. *Id.* at 931. For this reason, relying on the Ninth Circuit's holding in *Washington Mercantile*, the Court of Appeals of Washington thus held that restricted cannabis advertisements concerned lawful activity and thus was constitutionally protected speech for the purposes of the first step in the *Central Hudson* test, despite the sale of marijuana remaining illegal under federal law. *Id.* at 935.

The sale of cannabis remains illegal under federal law. 21 U.S.C. §§ 812(c) sched. I(c)(10), 841. Here, however, in addition to a challenge under the federal constitution, Plaintiff brings claims under the state constitution, which invokes state law, just as the plaintiff did in *Seattle Events*. [App. at 26]. Therefore, this case is distinguishable from *Montana Cannabis* and *Cocroft*, where the plaintiff-appellants relied solely on the protections of the United States Constitution and invoked only federal law. *See Mont. Cannabis Indus. Ass'n*, 368 P.3d at 1150; *Cocroft*, 712 F. Supp. 3d at 868, 875.

The licensed sale of cannabis is legal in California, and the commercial cannabis industry in the state is regulated by a comprehensive regulatory framework established by the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA). Cal. Bus. & Prof. Code § 26000. And the commercial speech at issue proposes cannabis transactions within California. Because existing case law supports extending constitutional protections to advertising for activities that are legal in the state where the transaction is proposed and where it would occur—and because Plaintiff also asserts a claim invoking state law through the California constitution—the Court finds that restricted cannabis advertising from licensed retailers in California concerns lawful activity for purposes of the first question of the *Central Hudson* test. *See Wash. Mercantile*, 733 F.2d at 691; *New Eng. Accessories*, 679 F.2d at 4.

It is reasonably well-known that recreational adult-use of cannabis is permitted in California but not federally; it is thus unlikely that cannabis billboard advertisements would mislead federal employees or the general public of its illegality under federal law and its possibility of abuse, as Defendant suggests. Therefore, because the restricted commercial speech here concerns lawful activity and is not misleading, the restricted commercial speech satisfies the first step of the *Central Hudson* test in determining whether the challenged restrictions receive constitutional protection. *See Cent. Hudson,* 447 U.S. at 566.

### 2.     Whether the City Asserts a Substantial Interest

The Court finds that the City has not asserted a substantial governmental interest that justifies its restriction on commercial speech.

Although the "concept of the public welfare is broad and inclusive" and the "values it represents are spiritual as well as physical, aesthetic, as well as monetary," *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984), the government's burden in justifying a restriction on commercial speech is not satisfied by mere speculation or conjecture; instead, the government must demonstrate that the harms it recites are real and substantial. *Valley Broadcasting Co. v. United States*, 107 F.3d 1328, 1331–32 (9th Cir. 1996); *see Metro Lights, LLC v. City of Los Angeles*, 551 F.3d 898, 904 (9th Cir. 2009) (recognizing traffic safety and aesthetic concerns as real and substantial governmental interest).

Here, Defendant offers no argument on this factor and "pretermit[s] [Plaintiff's] discussion of the other three factors . . . in *Central Hudson*," solely relying on its argument for the first factor. [App. Opp. at 12]. In the absence of any authority that has recognized as a substantial interest a city's attempt at mitigating its negative public perception as a "desirable place to live, visit, or invest" that may or may not affect property value or economic development, the Court finds such justifications inadequate to meet this factor. As Plaintiff points out, the City itself has conceded that the resulting adverse impacts to economic development and public welfare in the City are "difficult to quantify." [App. at 14]. Such speculative harm that may be caused by negative public perception of the City, without corroborating facts that explain its likelihood or degree of impact, is not a substantial governmental interest under this test.

As such, the City has not met its burden of asserting a substantial governmental interest in justifying the Ordinances' restrictions on commercial speech.

### 3. Whether the Ordinances Directly Advance the City Interest

The Court finds that the Ordinances do not directly advance the City's asserted interest, if any were to be recognized by this Court.

"The regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Edenfield v. Fane*, 507 U.S. 761, 769 (1993) (quoting *Cent. Hudson*, 447 U.S. at 564). Rather, the government must demonstrate that "its restrictions will in fact alleviate [the asserted harms] to a material degree." *Id.* at 762.

Here, even if the Court were to recognize the City's interest in mitigating the economic and reputational harms from the public's possible negative perceptions of the City through the cannabis advertisements, the City's own course of conduct subverts this proposed justification. The City cannot assert that cannabis advertisements on billboards within and just outside the City will skew the public's perception of the City so as to give the impression that it is "associated with drug use, nuisances, criminal activity, smoking and other health and safety concerns" while lawfully allowing cannabis businesses to operate and advertise on-site within the City. [*See* App. at 22]. Not only that, but the City has also made changes to its zoning to allow for cannabis businesses to operate more expansively within the City. [*Id.*]. The City likely would not need the help of billboard advertisements to impress onto its visitors that it is a city tolerant of cannabis businesses.

The Ordinances restricting off-site cannabis billboard advertisements are likely too ineffective or remote to advance the City's substantial interest, if any, to a material degree. As such, the Ordinances do not directly advance the City's interest.

### 4. Whether the Ordinances Are More Extensive Than Is Necessary to Serve That Interest

A restriction is more extensive than necessary if the City has other options that could advance its asserted interest in a manner less intrusive on First Amendment rights. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 491 (1995); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 358 (2002) ("If the Government

can achieve its interests in a manner that does not restrict commercial speech, or that restricts less speech, the Government must do so.").

Here, the Court finds that a complete ban of cannabis advertisements off-premises within the City and within a one-mile radius of the City that is within 660 feet of a freeway is more extensive than necessary to achieve its interest of mitigating the potential adverse effects of negative public perception. California's Medicinal and Adult-Use Cannabis Regulation and Safety Act expressly recognizes local jurisdictions' authority to adopt or enforce local ordinances regulating commercial cannabis activities, or to completely prohibit certain type of cannabis business within the jurisdiction. Cal. Bus. & Prof. Code §§ 26000, 26030(f), 26200(a)(1). If the City wished to rid itself of the potential negative perception of the City as a locale known for its cannabis, it is within the City's authority to begin this process by limiting cannabis businesses within its borders. *See, e.g., City of Riverside v. Inland Empire Patients Health & Wellness Ctr., Inc.*, 56 Cal. 4th 729, 762 (2013). Instead, the City has made a policy choice to foster and regulate cannabis within its borders through its 2016 Cannabis Operation Regulatory Program, which allows for cannabis cultivation, distribution, manufacturing, testing, and retail. [App. at 10]. Additionally, the City passed an ordinance in 2021 that also expanded the areas within the City for cannabis cultivation and distribution within the City's commercial zone. [*Id.* at 10–11]. The City thus has other options that could advance its asserted interests in a manner less intrusive on Plaintiff's First Amendment commercial speech rights.

As such, the Ordinances are more extensive than is necessary to serve the City's asserted governmental interest. All four of the factors in the *Central Hudson* test are unlikely to be met here. Accordingly, the Court finds that Plaintiff is likely to succeed on the merits of its claim for purposes of this temporary restraining order.

### C.     Likelihood of Irreparable Harm

With respect to a likelihood of irreparable harm absent relief, the Court finds Plaintiff has met its burden.

Irreparable harm is relatively easy to establish in a First Amendment case. *CTIA-The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019). A party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury . . . by demonstrating the existence of a colorable First

Amendment claim." *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002), *abrogated on other grounds by Winter v. Nat. Res. Def. Council.*, 555 U.S. 7, 22 (2008) (citation modified). "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Valle Del Sol Inc.*, 709 F.3d at 829 (applying this rule to a commercial speech case).

Here, Plaintiff has demonstrated a colorable violation of its First Amendment commercial speech rights. As such, its loss of this right, even for a minimal period of time, is an irreparable injury for the purposes of this Temporary Restraining Order.

### D.     Balance of Equities & Public Interest

With respect to the balance of equities and public interest, the Court finds Plaintiff has met its burden.

To prevail on the third factor, 'the harm to Plaintiff in the absence of an injunction must outweigh the harm to Defendant as the result of one." *Daimler AG v. A-Z Wheels LLC*, 498 F. Supp. 3d 1282, 1294 (S.D. Cal. 2020) (quoting *Anhing Corp. v. Thuan Phong Co.*, No. 13-CV-05167, 2015 WL 4517846, at *24 (C.D. Cal. July 24, 2015)). This Court's conclusion at this step is dictated by the Plaintiff's likelihood of success on their First Amendment claim. "The fact that the [Plaintiff] has raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiff's] favor." *See Am. Bev. Ass'n v. San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (quoting *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007). The balance of equities thus tips in favor of Plaintiff.

Lastly, with respect to the public interest, the Court finds Plaintiff's restraining order will favor the public. The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (citation modified). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation modified).

Additionally, as Plaintiff points out, the City is seeking to provide advertisements for cannabis businesses that are legally operating in the City. [App. at 27]. The public would want to be informed when making decisions on where to

visit, conduct business, or reside. The Court agrees with Plaintiff that the Ordinances are preventing the free flow of information that accurately reflects the characteristics of the City.

As such, the public interest would be served by the Temporary Restraining Order sought by Plaintiff.

## IV.  CONCLUSION

The Court **GRANTS** Plaintiff's Ex Parte Application for a Temporary Restraining Order. [Dkt. No. 10]. Defendant, its employees, agents, successors in office, all District Attorneys, County Counsel, and City Attorneys holding office, as well as their successors in office, are hereby enjoined from enforcing the Ordinances against Plaintiff Lamar Central Outdoor, LLC or any other person or entity engaged in lawful cannabis advertising.

This Order shall be in effect until October 24, 2025. The Court recognizes Plaintiff intended for its briefing in support of the Ex Parte Application for a Temporary Restraining Order to serve as Plaintiff's moving papers for a preliminary injunction. Accordingly, the Court **ORDERS** as follows:

- Defendants shall file an opposition regarding why a preliminary injunction should not be issued no later than October 17, 2025;

- Plaintiff may file a reply no later than October 20, 2025.

The Court **SETS** a hearing on whether a preliminary injunction should issue on **October 23, 2025 at 1:00 p.m.** via Zoom videoconference. [1]

**IT IS SO ORDERED.**

---

[1] The parties can stipulate to an alternative briefing schedule and hearing date.